**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**CASE NO:**

DAVID ULERY, individually and
on behalf of all others similarly situated,

    Plaintiff,

    v.

GLOBAL PERSONALS, LLC,
d/b/a SexyFans, and SEXY FANS, LLC

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, DAVID ULERY (hereinafter "Plaintiff"), brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendants, GLOBAL PERSONALS, LLC, d/b/a SexyFans ("Global") and SEXY FANS, LLC ("Sexy Fans") (collectively "Defendants"), for their violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2. In the course of promoting their business, Defendants and/or their agents placed nonconsensual and sexually charged text message advertisements to consumers' telephone numbers nationwide who were registered with the National Do-Not-Call Registry, in violation of the TCPA.

3. Plaintiff and each Class Member received unwanted robo-text messages from Defendants without proper regard to the TCPA, the Do-Not-Call Rules, and in disregard for individual privacy. Plaintiff and Class Members' phone numbers were registered with the National Do-Not-Call Registry. This lawsuit challenges all texts that were sent by Defendants, or on Defendants' behalf, to Plaintiff and Class Members from approximately December 2018, through the date of preliminary approval of class certification

4. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

5. The TCPA was designed to prevent texts like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff. The Federal Communications Commission (FCC) reports that unwanted calls constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021). In the fiscal year 2022, the Federal Trade Commission (FTC) ranked Colorado as receiving the eleventh most DNC complaints in the United States, having received 59,200 complaints from

---

[1]    *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

2

Colorado consumers about DNC violations alone. *See* Federal Trade Commission, *Do Not Call Data Book 2022* (Nov. 2020), https://www.ftc.gov/system/files/ftc_gov/pdf/DNC-Data-Book-2022.pdf (last visited December 19, 2022).

6. Additionally, the FCC has explicitly stated that the TCPA's prohibitions "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

7. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

## JURISDICTION AND VENUE

9. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendants' transmission of the unlawful and unwanted texts to Plaintiff in this District.

11. Plaintiff resides in Colorado Springs, Colorado, where the subject text messages were received, within the jurisdiction of this Honorable Court.

12. The Court has personal jurisdiction over Defendants because they conduct business in this state, market their services within this state, and have availed themselves to the jurisdiction of this state by placing calls to Plaintiff and Class Members in this state.

## PARTIES

13. Plaintiff's domicile is in Colorado Springs, Colorado.

14. Based upon information and belief, Defendants are related Florida companies located at, or operating out of, 705 Washington Ave, 2nd Floor, Miami Beach, FL 33139 and/or 12378 SW 82nd Avenue, Miami, FL 33156.

15. Based upon information and belief, Defendant Global is the owner and operator of Sexy Fans, and it otherwise derives direct financial benefit from the operations of Sexy Fans and is personally involved with Sexy Fans' operations.

16. Defendants sent the text messages for financial gain to promote their "SexyFans" Application and website. Defendants' Privacy Policy makes clear that its "*Services*" include "transactions for *purchasing Sexyfans subscription services*."

4

17. Defendants use a business model whereby they promote their online dating application and website that assists or connects individuals to "hook up" with locals in their community and "share premium explicit pics and videos while meeting people who love sex," in part, by blast sending unsolicited text messages to wireless cell phone users, including Plaintiff and Class Members.

18. Defendants, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

19. At all times relevant, Plaintiff, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

20. Defendants are authorized to engage in business in the State of Colorado, and at all times mentioned herein were a corporation and/or "person," as defined by 47 U.S.C. § 153(39).

21. At all times relevant Defendants conducted business in the State of Colorado, within this judicial district.

22. Defendant utilizes bulk SPAM text messaging, or SMS marketing, to send unsolicited text messages, marketing and advertising of its services, including at least **4** unsolicited text messages to Plaintiff.

23. Plaintiff has been receiving these unsolicited text messages since at least as early as January 26, 2022.

24. The text messages received by Plaintiff contained sexually suggestive links including <privateexclusivedates.theater>, <cnaughtylive.clothing>, and <datinghiswifes.clothing>.

25. To investigate the source of these unwanted and personally offensive text messages to Plaintiff, Plaintiff clicked the links. All of the above links forwarded Plaintiff directly to Defendants' sexually explicit SexyFans website. Images of the website that Plaintiff was directed to are depicted below for demonstrative purposes:



26. In response to one of the unwanted text messages sent on January 29, 2022, Plaintiff clearly and expressly replied "STOP."

27. Despite Plaintiff's clearly expressed "STOP" message, Defendants continued to text Plaintiff, at least one additional time on January 30, 2022.

6

28. Plaintiff's investigation and investigation of counsel revealed that "SexyFans" is owned and/or operated by Defendants jointly or in concert with one another.

29. All texts received by Plaintiff were sent for the purpose of promoting Defendants' services and business.

30. At no time did Plaintiff consent to receiving unsolicited telemarketing text messages from Defendants.

31. Plaintiff registered his personal cell phone number ending in 7000 on the National Do-Not-Call Registry on or about February 6, 2008.

32. At all times relevant herein, Plaintiff was the subscriber or customary user of his cellular telephone number that Defendants texted and is financially responsible for phone service, including the cellular costs and data usage incurred as a result of the unlawful texts made to Plaintiff by Defendant.

33. Plaintiff did not provide Defendants or their agents prior express written consent to receive the unsolicited text messages.

34. Defendants placed the texts to Plaintiff and Class Members regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

35. Plaintiff was damaged by Defendants' text messages. In addition to using Plaintiff's cellular data, his privacy was wrongfully invaded, causing annoyance, aggravation, frustration, distraction, inconvenience, time spent investigating, and risk of future harm. Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted, sexually explicit robo-text messages, forcing him to divert attention away from his work, home life, and other activities.

36. Plaintiff wasted considerable time investigating to discover the source and company responsible for the unwanted, illegal and unauthorized texts to Plaintiff's personal cell phone.

## LIABILITY FOR CALLS PLACED BY THIRD PARTIES

37. To the extent Defendants outsourced their robocalling, they are still liable for calls that violate the TCPA.

38. Defendants are liable for third-parties' actions if they took steps to cause the calls to be made, or if the calls were made pursuant to Defendants' actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this class action under Rule 23(a),(b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **Do Not Call Registry Class:** All people in the United States who from four years prior to the filing of this action (1) were texted or called by or on behalf of Defendants; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants' claim (a) they did not obtain prior express written consent, or (b) they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to call the Plaintiff

40. Excluded from the Class are Defendants, and any subsidiary or affiliate of Defendants, and the directors, officers and employees of Defendants or their subsidiaries or affiliates, and members of the federal judiciary.

41. This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

8

Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

42. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of standardized SPAM campaign calls placed to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

43. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to Defendant's calls and personnel records.

44. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

45. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether, within the four years prior to the filing of the Complaint, Defendants or their agents sent any unsolicited text message(s) (other than a message made for

    emergency purposes or made with the prior express consent of the called party) to a Class member using a texting system to any telephone number assigned to a cellular phone service;

b. Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

c. How Defendants obtained the numbers of Plaintiff and Class members;

d. Whether Defendants engaged in telemarketing when it sent the text messages which are the subject of this lawsuit;

e. Whether the text messages sent to Plaintiff and Class Members violate the TCPA and its regulations;

f. Whether Defendants willfully or knowingly violated the TCPA or the rules prescribed under it;

g. Whether Defendants instituted procedures for maintaining a list of persons who request not to receive telemarketing calls that met the standards set forth in 47 C.F.R. § 64.1200(d)

h. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendants' acts and conduct;

i. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in its unlawful conduct; and

j. Whether Plaintiff and the Class are entitled to any other relief.

46. One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

47. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

48. Plaintiff and members of the Class each received at least one text message, advertising the Sexy Fans applications or website, which Defendants placed or caused to be placed to Plaintiff and the members of the Class.

49. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation, and class action litigation.

50. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this

matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

51. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendants to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted texts.

## COUNT I
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227
**(Against GLOBAL On Behalf of Plaintiff and the Do Not Call Registry Class)**

52. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 51 of this Complaint as though fully stated herein.

53. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

54. Plaintiff's telephone number has been registered on the national Do-Not-Call Registry throughout the four-year period prior to the filing of this Complaint.

55. 47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

56. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

57. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

58. GLOBAL violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

59. GLOBAL violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of GLOBAL in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60.     To the extent GLOBAL's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against GLOBAL, individually, and jointly and severally, as set forth in the Prayer for Relief below.

### COUNT II
### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227
**(Against SEXY FANS On Behalf of Plaintiff and the Do Not Call Registry Class)**

61.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 51 of this Complaint as though fully stated herein.

62.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

63.     Plaintiff's telephone number has been registered on the national Do-Not-Call Registry throughout the four-year period prior to the filing of this Complaint.

64.     47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

65.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

14

66. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

67. SEXY FANS violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

68. SEXY FANS violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of SEXY FANS in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

69. To the extent SEXY FANS' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against SEXY FANS, individually, and jointly and severally, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendants for:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. Statutory damages of $500 per text in violation of the TCPA;

c. Willful damages at $1,500 per text in violation of the TCPA;

d. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e. An injunction prohibiting Defendants' from calling any individual whose number appears on the National Do Not Call Registry;

f. Reasonable attorney's fees and costs; and

g. Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

**Dated this 19th day of December 2022.**       Respectfully Submitted,

| | |
|---|---|
| **EGGNATZ \| PASCUCCI** | **JORDAN RICHARDS, PLLC** |
| 7450 Griffin Road, Suite 230 | 1800 Southeast 10th Ave., Suite 205 |
| Davie, Florida 33314 | Fort Lauderdale, Florida 33316 |
| Tel: (954) 889-3359 | Tel: (954) 871-0050 |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |
| By: */s/ Joshua H. Eggnatz* | By: */s/ Jordan Richards* |
| JOSHUA H. EGGNATZ, ESQUIRE | JORDAN RICHARDS, ESQUIRE |
| Florida Bar No. 0067926 | Florida Bar No. 108372 |
| MICHAEL PASCUCCI, ESQUIRE | *Jordan@jordanrichardspllc.com* |
| Florida Bar No. 83397 | *Jake@jordanrichardspllc.com* |
| *jeggnatz@justiceearned.com* | |
| *mpascucci@justiceearned.com* | |

Seth M. Lehrman
Fla. Bar No.: 178303
(to be admitted *Pro Hac Vice*)
**EDWARDS POTTINGER LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Tel: (954) 524-2820
Fax: (954) 524-2822
seth@epllc.com

17